**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA**
Plaintiff,

v.                                                    **CIVIL NO. 93-1494 (DRD)**

**ONE URBAN LOT LOCATED AT, et al.,**
Defendants.

### AMENDED OPINION AND ORDER

Pending before the Court is claimants' *Fourth Motion Requesting Execution of Judgment*

(Docket No. 362) moving the Court to order the Government to return claimants the fair market

value of the Los Brujos de Guayama basketball franchise.  For the reasons stated herein, the Court

hereby **DENIES** claimants' request.

### FACTUAL BACKGROUND

As a result of a criminal proceeding before the United States District Court for the Southern

District of New York, criminal case <u>United States v. Robert Torres, et al.</u>, 93 Cr. 273(LAP), on June

28, 1003, District Judge Loretta A. Prestka, S.D.N.Y., issued a "restraining order" directing the U.S.

Marshal Service to oversee the administration of the basketball team "Los Brujos de Guayama".[1]

On September 30, 1996, a stipulation entered by the parties and approved by the court , the parties

agreed that the United States was "to release and return to [claimants] all their personal properties

---

[1] In its relevant parts, the Order issued by District Judge Prestka ordered the U.S. Marshal Service to:
1) Permit Eduardo Gonzalez and Alfredo Mendez to continue to operate the Franchise in the ordinary course of business.
2) Prohibit the defendant Enrique Rodriguez Narvaez from any contact, direct or indirect with anyone associated in any way with the franchise, and prohibit the defendant Enrique Rodriguez Narvaez from exercising any influence or control over the operation of the franchise.
3) To open a holding account into which all profits of the operation of the franchise shall be deposited in an escrow account pending the disposition of the criminal forfeiture proceedings in this case.
4) Designate a monitor to insure that the terms of the restraining order were obeyed.
5) Conduct an immediate audit of the books and records of the franchise to assess the financial condition of the Franchise.

that were seized during the present case". (*See*, Docket No. 245 & 246).

Notwithstanding the order to restrain, and the stipulation to release claimants' seized property, the undesigned notes that at least since March 31, 2003, the Government has stated its position that the franchise was never seized rather that money was deposited into an account with the court. (*See*, Minutes of Proceedings 3-31-2003, Docket No. 325). Furthermore, throughout the proceedings, the Court has issued orders addressed to the Clerks of Court for the Southern District of New York and the District of Puerto Rico, and to the U.S. Marshal Office for the Southern District of New York and for the District of Puerto Rico requesting specific information relating to the monies deposited and/or in possession, and to any other item in their custody which may have belonged to the Guayama Basketball Team "Los Brujos". (*See*, Docket No. 326, 334, 337, 338.) The issued Orders noted that one of the remaining issues pending before the Court was whether all rights, titles and interest in the basketball franchise "Los Brujos" had been "restrained and/or seized".

After the corresponding reports by the U.S. Marshal Office and the Clerk of Court were filed, counsel for claimants affirmed that the Order issued by District Judge Prestka was not fully complied with because the report provided by the U.S. Marshal Office for the Southern District showed that report was devoid of any reference to the audit of the books and records, no comments were provided by a designated monitor, and reference relating to a holding account which was ordered to be opened was lacking. (*See*, Amended Minutes of Proceedings 4-27-2004, Docket No. 347). On March 10, 2005, the Government acquiesced to the fact that no audit of the books and records was made, that no monitor was named, and that the escrow account was never opened because it was their position that the order issued by District Judge Preska did not have to be complied as the basketball franchise was never forfeited. (*See*, Minutes of Proceedings 3-10-2005, Docket No. 367). The District Court

expressed that there was a valid Order issued by a federal judge in another district which had to be complied hence, an Evidentiary Hearing was scheduled to fully clarify these matters. (*See*, Minutes of Proceedings 3-10-2005, Docket No. 367). Nevertheless, due to counsel for claimants' unquestioned valid health condition, said Evidentiary Hearing was continued sine die until counsel's health condition improved to allow him to proceed.

Counsel for claimants have raised once again its request for an Order of execution of judgment and moves the Court to order the Government to return to claimants the fair market value of the franchise. (Docket No. 362). However, this time, counsel for claimants attacks the position assumed by the Government that a seizure never occurred rather "Los Brujos" was restrained. Counsel for claimants sustain that for all legal purposes the terms seizure and restraining order are synonyms.

In support of its position, claimants sustain the applicable caselaw provides that a "seizure occurs when there is a meaningful [governmental] interference with an individual possessory interest in that property".[2] Likewise, for a claimant to be entitled to the protection afforded by the due process clause, "the claimant mus set forth evidence that the government has interfered with the right to occupy, use, enjoy, receive rents from the property while the forfeiture action is pending".[3] Claimants sustain that the order issued by District Judge Preska satisfied the aforementioned requisites inasmuch there is "a meaningful interference with claimants' possessory interests".

Furthermore, claimants averred that under the Comprehensive Forfeiture Act of 1984, the Government was authorized to aggressively pursue assets to avoid fraudulent conveyance of potentially forfeitable assets by the removal, transfer or concealment of defendants' assets prior to

---

[2] Claimants define "a seizure" under <u>U.S. v. Jacobsen</u>, 466 U.S. 109 (1984); <u>Towen v. Browen</u>, 326 F.3d 290 (1st Cir. 2003).

[3] *See*, <u>U.S. v. Land Winston County</u>, 163 F.3d 1295 (11th Cir. 1998); <u>Good v. U.S.</u>, 510 U.S. 43 (1993).

conviction.  Likewise, the Government was vested with authority to request and obtain restraining orders to prevent the transfer or improper disposition of said forfeitable assets.

Claimants sustain that the restraining order issued by District Judge Preska under the drug forfeiture provision pursuant to 21 U.S.C. §853(e) is a protective order preventing "the transfer or improper disposition of forfeitable assets".  Thus, claimants affirm that the Government through a restraining order may seize assets avoiding the disposition of said assets preserving its availability and that failure to enter the order could result in said assets being destroyed or removed from the jurisdiction hence, unavailable for forfeiture.  21 U.S.C. §853(e)(1)(B)(I).

Furthermore, claimants reaffirm that the Government never complied with the restraining order issued by District Judge Prestka at Note No. 1 of this Opinion and Order.  In other words, an escrow account wherein the income of the basketball team was to be deposited was never opened; a monitor was never appointed; and that basketball franchise's books and records were never examined or audited failing to determine the financial condition of such franchise.  Finally, co-claimant Myrna Rivera sustains that she was declared an innocent spouse under and the court ordered the release of her percentage of ownership in all properties, the Government was barred from forfeiting her percentage in said properties and now she is entitled to receive and is claiming the 50% of the value of said properties at the time of forfeiture.

The Government counters by firstly asserting that the order issued by District Judge Prestska instructed that the basketball franchise "**be audited without limiting or restraining its finances or operations**".  (Emphasis added).  The Government sustains that an audit of the books and records was performed without limiting or restraining its finances or operations.  Further, the Government asserts that the audit was performed by the auditor's firm of De Angel & Compañía, and the report rendered recommended that the Government should not forfeit said franchise.  Finally, the United

States avers that testimony obtained during the deposition of Mr. Alfredo Mendez (Franchise's officer and manager for the period of 1993-1994) reveals that the franchise was operated by the managers assigned by the basketball League and that the Government never interfered with team's operations. Hence, the United States concludes that it never interfered, interrupted or controlled the operations or financial administration of the franchise hence any consent judgment has been mooted.

Further, as to claimants' argument that seizure and restrain are synonyms, the Government sustains the contrary. Specifically, the United States sustains that while a seizure interferes with a person's expectancy of privacy by taking possession of a property by legal right, a restraining order seeks the prevention of the dissipation or loss of property. Hence, "one does not give the right to what the other allows". The Government avers the evidence reveals that Mr. Alfredo Mendez managed the franchise until he was unavailable, only to prevent that claimant Rodriguez-Narvaez have any contact with the franchise and a separate bank account was thus opened. Therefore, preventive administrative actions were taken by the franchise's management and not by the Government consequently, no interference or intrusion upon claimants' property and/or rights was performed by the United States. The only action taken related to the Court order was that the Marshal Service hired an auditor to perform the audit. In the alternative, the United Stated submits that there was no meaningful intrusion into claimants' possessory interests and if there was an infringement to such claimants' interests, it was *de minimis* and constitutional reasonable. Finally, the Government alleges that the franchise's financial success or failure resulted from the management's decisions since the ordered seizure never took place, and the franchise League officials continued to manage the franchise's affairs. Consequently, the Government sustains that the Order resulting from a compromise settlement  issued by District Judge Prestka on August 27, 1997, as to "Los Brujos" never actually restrained the franchise.

However, the Government does acknowledge that the U.S. Marshal Office for the District of Puerto Rico engaged the firm of De Angel & Compañía to provide an audit of the books and records of the franchise without limiting or restraining the franchise's finances or operations. The Government sustains that report rendered by the auditing firm reveals that the franchise had a deficiency amounting to $30,445.00 and that the operation of the franchised represented higher risks and liabilities than the benefits of operating the same because the franchise failed to have any history of long-term assets. The report further concluded that the Government could incur in debt, personal and public liability, employers' liability, etc., diminishing the opportunities of generating revenues because of the effort and expenses needed to be incurred to obtain the necessary sponsorship required to operate the basketball franchise.

## LEGAL ANALYSIS

### A.  SEIZURE v. RESTRAINING ORDER

At the outset, the Court must determine whether a seizure and a restraining order are synonyms. According to Black's Law Dictionary, a restraining order is "a court order entered to prevent the dissipation of loss of property". Black's Law Dictionary, 1340 (8th ed. 2004). To the contrary, a seizure is "the act or an instance of taking possession of a person or property by legal right or process; ... a confiscation or arrest that may interfere with a person's reasonable expectation of privacy". Id, at 1389.

Seizure, means simply "exercising direct control and possession over [claimant's property]". United States v. A Group of Islands, 185 F.Supp. 2d 117, 121n.7 (D.P.R. 2001). Further, the Supreme Court has determined that property seizures without prior notice do not violate the Fourth Amendment of the Constitution of the United States and said property is subject of civil forfeiture, inasmuch said property may "be removed to another jurisdiction, destroyed, or concealed if advance

warning were given".  Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679 (1974).  However, should real property be the subject of a civil forfeiture the guarantees afforded by the Fourth and Fifth Amendments of the Constitution of the United States must be preserved.  *See generally*, U.S. v. James Daniel Good Real Property, 510 U.S. 43 (1993).  Bluntly expressed, the drug forfeiture statute, does not deprive innocent owners of their property because the affirmative defense of innocent ownership is allowed by the statute.  Id., at 55.  Moreover, in real property civil forfeiture proceedings, the real property cannot be absconded hence the "[s]ale of the property can be prevented by filing a notice of *lis pendens* ... [under local state law] ... or the Government may obtain an *ex parte* restraining order, or other appropriate relief, upon a showing in a district court".  Id., at 58.

The court needs to go no further.  The definitions provided above show that there are procedural and substantive differences between the legal repercussion as to a restraining order and a seizure.  Basically, in a restraining order a party's conduct is restrained from performing specific acts, and in the specific case of real property, no transfers of titles or rights are effectuated.  To the contrary, a seizure precisely seeks to transfer property from its rightful owner to a new owner as allowed by statute.  Therefore, claimants' argument that a restraining order is a "special kind of seizure" fails because as stated previously, although the restraining order preserves the availability of an asset from its improper disposition, it does not transfer title, rights and/or ownership.  In order to achieve the transfer of ownership a seizure procedure must be initiated to determine whether said asset is forfeitable.  The Court concludes that in the case at bar there was a restraint as to possession but not a seizure.

## B.  REQUEST FOR JUDGMENT

Claimants, for the fourth time, move the Court to enter judgment against the Government and

order payment in full of the amounts of monies that were ordered seized pursuant to the Order issued by District Judge Preska.  Specifically, claimant Myrna Rivera sustains that she was declared an innocent spouse under 21 U.S.C. §881(a)(6) and 21 U.S.C. §881(1)(7) hence she is entitled to receive the 50% of the value of the franchise at the time it was seized.  The Government has not objected to claimant's request hence, pursuant to Local Civil Rule 7.1(b) all objections are deemed waived.

The Court has reviewed the extensive record and notes that on October 30, 2001, the Government was ordered to show cause as to why they should not be ordered to pay the submitted value from all rights, title, and interest in "Los Brujos" basketball franchise as then claimed by the appearing parties.  (Docket No. 311).  Notwithstanding, claimants' *Third Motion for Execution of Orders* (Docket No. 308) moving the court to order the Government payment in full of said amounts was denied on the grounds that the rights to the basketball franchise were part of an indictment brought through the U.S. District Court in the Southern District of New York, not through a separate indictment in this District Court and that said rights had been previously released from the United States since 1977.  (Docket No. 314).

Notwithstanding, on September 10, 2002, the Court vacated its prior ruling on the grounds that the Court had been induced by the Government into error (not purposely) through their motions and supporting documents.  (Docket No. 318).  The Court further noted that the Government failed to timely oppose claimants' fair market valuation of the basketball franchise but was allowed to file its objections to said valuation.  (Docket No. 318).  In its response, the Government sustained that in order to valuate the franchise, expert testimony is required and that claimants' alleged value lacks supporting analysis and documentation.  Further, the United States averred that certain items claimed by claimants as receivables had been forfeited to the United States, or released, hence claimants

would not be entitled to any rights over said items.

On March 26, 2003, the Court issued an Order wherein a Hearing was scheduled to receive evidence relating to the proposed valuation of claimants' seized properties. (Docket No. 322). From there on, the instant case has been stalled as a direct result of both parties. On one side, claimants posits that the franchise was in fact seized while the Government sustains that it did not seize any of claimants' assets and has affirmatively asserted that any money deposited within the Court would be returned to claimants. Notwithstanding, on July 14, 2003, the Court issued an Order recognizing that no monetary amount relating to claimants' requests had been deposited within the Clerk's Office for the Southern District of New York nor the District of Puerto Rico. (Docket No. 331).

On March 18, 2004, the Court noted that the U.S. Marshal Office for the Southern District of New York and for the District of Puerto Rico submitted their respective reports and claimant was ordered to show cause as to why the remaining claims should not be dismissed. (Docket No. 342). Further, after said reports were filed claimants complained and restated their position that the U.S. Marshal Office for the Southern District of New York never complied with the order issued by District Judge Prestka however, raised their concern as to the whereabouts of a sum of money that showed in said report. Finally, the Court deemed that an Evidentiary Hearing was necessary wherein all remaining matters were to be addressed. (Docket No. 345).

Therefore, the Court notes that an Evidentiary Hearing has been scheduled for two main purposes during the pendency of the instant litigation, to wit, first, the Court must determine whether the Government seized any assets related to "Los Brujos" basketball franchise, and second, the amount to be disbursed to claimants regarding the basketball franchise if said franchise was in fact affected by Government action. However, the Court notes that the Government consistently has reiterated that it did not comply with District Judge Prestka's Order because a seizure never

occurred.[4]  As the Court has stated in its previous order, there is a valid order issued by a judge in other district which had to be complied with.  (Docket No. 367).  Consequently, in order to grant claimants' request for an order in execution of judgment, an Evidentiary Hearing addressing the instant queries must be held prior thereto specifically since there are critical facts in controversy.

Therefore, for the reasons stated herein, the Court hereby **DENIES** claimants' *Fourth Motion Requesting Execution of Judgment* (Docket No. 362).  Instead, the Court sets an **Evidentiary Hearing for <u>May 15 - 18 2006 at 9:00 a.m.</u>  Absolutely any request for a Continuance shall be SUMMARILY DENIED.**

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 9th day of March 2006.

**S/DANIEL R. DOMINGUEZ**
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

---

[4] Apparently there is deposition testimony that third parties related to the Basketball League operated the franchise.  Further, there is an evaluation by an auditor apparently recommending the Government no to take over the team. (No assets, high risks involved in operating the franchise.)  But there is still the fact that a significant part of the Order issued by District Judge Prestka was not complied with, No monitor was appointed, no audit was performed, no escrow account was established.

Page 10 of  10